## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Gerald Cahill, being sworn, do hereby depose and state as follows:

1. I am police officer with the Boston Police Department where I have been employed for more than 6 years. I am currently assigned to the Drug Control Unit ("DCU") in District C-11, which covers areas of Dorchester.

2. During my tenure with the Boston Police Department, I have participated in investigations relating to the distribution of controlled substances including cocaine, cocaine base (also known as "crack cocaine"), heroin, marijuana, and other illegal drugs and have received training in the area of narcotics investigations. I have been the affiant on affidavits in support of search warrants, arrest warrants, and other applications.

3. This Affidavit is submitted in support of an application for a criminal complaint charging **CORNELL SMITH** with distribution of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841.

4. I am familiar with and participated in the underlying investigation. I have also reviewed reports and spoken with officers who surveilled the drug transaction with me, assisted me

in the recovery of drugs from GEORGE COOPER (**SMITH**'s customer), and who arrested **SMITH** moments later in possession of both the money used by COOPER to buy the drugs and the telephone that COOPER used to contact **SMITH**.

5. This affidavit does not set forth all the facts developed during the underlying investigation. Rather, it sets forth facts I believe to be sufficient to establish probable cause to believe that **SMITH** committed the crime set forth in the accompanying Criminal Complaint.

6. The investigation in this case began at approximately 5:15 p.m. on August 16, 2008, when I and other members of the Boston Police Department's Area C-11 Drug Control Unit ("DCU") (including Sgt. Det. Terestre, Officers Rogers and Miskell, and Detective O'Sullivan) were conducting surveillance in the area of Summer and Stoughton Streets in the Uphams Corner section of Dorchester. At that time, we saw a white male later identified as GEORGE COOPER get out of a white Chrysler 300C.

7. COOPER got out of his car and walked to the intersection of Stoughton and Summer Streets. As he did so, COOPER made a phone call and appeared to be looking in all directions.

8. After completing the call on his cellular telephone, COOPER walked down Stoughton street in the direction of Columbia Road. When he got to the corner, he placed a second call and as

soon as that call was completed, walked back the way he came (up Stoughton Street towards Summer Street).

9. As COOPER was walking up Stoughton Street, he waived his cellular telephone in the air as if greeting someone. When COOPER got to the area of 49 Stoughton Street, he met a black male later identified as **CORNELL SMITH.**

10. Officers observed COOPER counting and then handing an amount of money to **SMITH**. **SMITH** took the money and then handed something back to COOPER. COOPER looked at the object that **SMITH** had just placed in his hand and then quickly walked back to his car.

11. Based on our training and experience, Officers Rogers, Miskell and I concluded that we had just witnessed a deal in which COOPER had purchased drugs from the black male who was later stopped and identified as **SMITH**. We therefore followed and stopped COOPER's car.

11. We <u>Mirandized</u> COOPER and advised him of our belief that he had just obtained drugs. COOPER directed us to a crumbled dollar bill between the driver's seat and door which was found to contain 5 rocks of suspected crack cocaine. COOPER admitted that he had just obtained the drugs from a black male on Stoughton Street who he knew as "Jeff" and who he contacted via cellular telephone number 617-229-9239. He further stated that he had

paid $80 for the drugs and had given "Jeff" 3 bills including a fifty, a twenty, and a ten.

12.  While COOPER was stopped and interrogated, Sgt. Det. Terestre and other officers kept **SMITH** under constant surveillance. As soon as they were advised that crack had been recovered from COOPER, they approached **SMITH** and placed him under arrest for distribution of a Class B substance.

13. Sgt. Det. Terestre advised **SMITH** of his <u>Miranda</u> rights and then searched him with the assistance of Detective O'Sullivan. A total of $243 was recovered from **SMITH** including $80 which was separate from the rest of his cash and which included three bills (a fifty, a twenty, and a ten).

14.  At booking, two cellular phones were also recovered from **SMITH**. When officers dialed 617-229-9239 (the number provided by COOPER as the number he used to order drugs from "Jeff" shortly before being stopped by the police), the Nokia flip phone seized from **SMITH** began to ring.

15. The drugs seized from **COOPER** (which I inspected and determined to have the unique appearance of crack cocaine) were thereafter taken to the State Laboratory in Boston for analysis. On October 15, 2008, the lab tested 1 of the 5 rocks seized from COOPER and certified that it contained .18 grams of cocaine. I

understand that additional testing for the presence of cocaine base may also be done.

16. Based upon the foregoing, I submit there is probable cause to believe that, on August 16, 2008, **CORNELL SMITH** distributed cocaine in violation of 21 U.S.C. §841.

_____
OFFICER GERALD CAHILL
BOSTON POLICE DEPARTMENT

Sworn to and subscribed before me this 16 day of October, 2008.

_____
TIMOTHY S. HILLMAN
UNITED STATES MAGISTRATE JUDGE